ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2014 DEC 29 A 11: 39
CLERK
SO. DIST. OF GA.

```
ASHLIE DANIELLE ISHMAEL,           *
individually, and as next friend   *
of ALAYNA ROSE ISHMAEL, a minor,   *
                                   *
          Plaintiff,               *
                                   *
     v.                            *    CV 114-175
                                   *
GENERAL GROWTH PROPERTIES, INC.;   *
GENERAL GROWTH MANAGEMENT, INC.;   *
GENERAL GROWTH SERVICES, INC.;     *
AUGUSTA MALL, LLC; ANDREW PAUL     *
WILKE; NATIONAL LIFE AND           *
ACCIDENT INSURANCE CO.; VALOR      *
SECURITY SERVICES, INC.; JOHN      *
DOE CORPORATIONS 1-10; and JOHN    *
DOES 1-50,                         *
                                   *
          Defendants.              *
```

### ORDER

This case comes before the Court on removal from the Superior Court of Richmond County. Now before the Court is Plaintiff's Motion to Remand. (Doc. 7.) Upon due consideration, and for the reasons stated herein, Plaintiff's motion is **GRANTED**.

# I. BACKGROUND

Plaintiff filed suit against Defendants in the Superior Court of Richmond County on July 21, 2014, asserting claims based on premises liability. (Compl., Doc. 8 Ex. A, ¶ 18.) In her complaint, Plaintiff alleges that on August 28, 2013, she and her 2-year-old daughter, Alayna Ishmael, visited the Augusta Mall located at 3450 Wrightsboro Road, Augusta, Georgia. (Id. ¶ 1.) While at the mall, Alayna fell into an interior water fountain that was located in close proximity to the play area. (Id. ¶ 20.) According to Plaintiff, the fountain's location "creat[ed] a dangerous condition" for young children. (Id.)

Plaintiff alleges four acts of negligence against Defendants in her complaint: (1) "failing to keep and maintain the premises in a safe condition" (Id. ¶ 22); (2) "failing [to] provide adequate safeguards in and around the water fountain" (Id.); (3) "choosing to locate a play area for children of tender years in close proximity to a water fountain" (Id. ¶ 23); and (4) "causing the view from the playground to the fountain to be obstructed thereby making it difficult for anyone [to see] children [] falling into the fountain" (Id. ¶ 24).

Defendants filed their Notice of Removal on August 29, 2014. (Doc. 1.) Defendants allege that Andrew Paul Wilke was fraudulently joined as a party and Valor Security Services was

improperly identified as a party[1] and thus the Court should disregard their citizenship for jurisdictional purposes. (Doc. 1 ¶¶ 8, 10.) On September 16, 2014, Plaintiff filed the instant Motion to Remand, which the Court considers now.

## II. LEGAL STANDARD

Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question or (2) where diversity jurisdiction exists. 28 U.S.C. § 1441(a-b). Federal courts, as courts of limited jurisdiction, must remand a case removed on diversity where there is not complete diversity of citizenship between the parties or where one of the named defendants is a citizen of the state in which the suit is filed. 28 U.S.C. § 1441(b). In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added).

Even so, courts may retain jurisdiction and "ignore the presence of a non-diverse defendant" where the plaintiff joined that party to defeat federal diversity jurisdiction. Stillwell

---

[1] According to Defendants the proper party is Mydatt Services, Inc. (Doc. 1 ¶ 10.)

3

v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). "In such a case, the plaintiff is said to have 'fraudulently joined' the non-diverse defendant." McKenzie v. King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *1 (S.D. Ga. Nov. 9, 2012).

> To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'

Stillwell, 663 F.3d at 1332 (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (alterations omitted)).

With a motion to remand, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." McKenzie, 2012 WL 5473498, at *2 (internal quotations omitted). The court must "not [] weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Stillwell, 663 F.3d at 1332. Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), superseded by statute

4

on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); Stillwell, 663 F.3d at 1333 (reversing a district court's denial of a motion to remand and holding that the district court erred in concluding the defendant was fraudulently joined because "at the very least, [it is] possible that a Georgia state court would conclude that" the plaintiff's complaint stated a cause of action against the defendant given Georgia's notice pleading standards).

"The burden of establishing fraudulent joinder is a heavy one, and such a claim must be supported by clear and convincing evidence." Poll v. Deli Mgmt., Inc., No. 1:07-cv-959, 2007 WL 2460769, at *3 (N.D. Ga. Aug. 24, 2007) (internal quotations and citations omitted). In addressing a fraudulent joinder claim, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie, 2012 WL 5473498, at *3 (quoting Stillwell, 663 F.3d at 1334). In contrast to the federal pleading standard, Georgia simply requires notice pleading. See O.C.G.A. § 9-11-8. Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives

fair notice . . . ." Carley v. Lewis, 472 S.E.2d 109, 110-11 (Ga. Ct. App. 1996).[2]

## III. DISCUSSION

Defendants contend that the Court should disregard Mr. Wilke's presence for jurisdictional purposes because he was fraudulently joined in order to defeat diversity jurisdiction.[3] Specifically, Defendants allege that Plaintiff cannot prove a cause of action against Mr. Wilke under Georgia law. Given the above, the Court must determine whether there exists a "possibility that a state court would find that the complaint states a cause of action against" Mr. Wilke. See Coker, 709 F.2d at 1440-41.

---

[2] Defendants argue that Plaintiff failed to specifically allege Mr. Wilke was an "owner or occupier" in the complaint, and instead only asserted that he was the manager of the shopping mall. (Doc. 10 at 4.) Defendants further claim that Plaintiff "fails to include any allegation of what, if anything, Defendant Wilke did or failed to do in that capacity which caused or contributed to the damages sought." (Id.) Defendants thus contend that because Plaintiff used the generic term "Defendants" in her complaint, rather than specifically identifying each Defendant's actions, she is unable to state a claim against Mr. Wilke. (Id. at 7-8.)

In McKenzie, the court addressed the failure to specifically identify individual defendant's actions. There, the defendants argued that the complaint used "the plural term 'Defendants' and [did] not distinguish between the actions of each defendant individually." McKenzie, 2012 WL 5473498, at *4. The court expressly held that the plaintiffs' "decision to use the plural 'Defendants' is consistent with Georgia's notice pleading requirement." Id. This Court agrees. Although Plaintiff used the more generic term "Defendants" rather than individually identifying each individual Defendant, it is clear that each Defendant has been put on notice of the claims.

[3] Defendants also challenge Valor Security Systems' presence for jurisdictional purposes, claiming that the proper party is Mydatt Services, Inc. Because the Court finds that Mr. Wilke's presence in the instant action destroys diversity, it does not address Valor Security Systems' status.

6

Plaintiff alleges negligence based on the doctrine of premises liability in her complaint. In Georgia, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. Thus, to owe a duty under this statute, Mr. Wilke must qualify as "an owner or occupier of land." Id. "To determine whether a person was an owner or occupier subject to liability under O.C.G.A. § 51-3-1, the critical question is whether the individual exercised sufficient control over the subject premises at the time of injury to justify the imposition of liability." Poll v. Deli Mgmt., Inc., No. 1:07-cv-0959, 2007 WL 2460769, *4 (N.D. Ga. Aug. 24, 2007) (citing Scheer v. Cliatt, 212 S.E.2d 29, 31 (Ga. Ct. App. 1975)).

The primary issue before the Court is the apparent inconsistency in the interpretation of § 51-3-1 by Georgia courts. Specifically, as Judge Story detailed in Poll, some Georgia cases "have suggested that the 'control' required for premises liability is restricted to *legal* control over the property in the form of an ownership or other possessory interest." Poll, 2007 WL 2460769, at *4 (citing Ga. Bldg. Servs. Inc. v. Perry, 387 S.E.2d. 898, 905 (Ga. Ct. App. 1989)).

7

Other Georgia courts have recognized that liability may be established under the statute "where the individual had *supervisory* control over the subject premises at the time of injury." Id. (listing cases). Consistent with the latter view, "[m]ost courts agree that exhibiting some level of supervisory control will be sufficient to include a store manager within the § 51-3-1 definition of 'owner or occupier.'" Ott v. Wal-Mart Stores, Inc., No. 5:09-cv-215, 2010 WL 582576, *2 (M.D. Ga. Feb. 16, 2010).

A number of Georgia courts have interpreted the meaning of "owner or occupier" to include those with something less than a legal possessory interest. See, e.g., Norman v. Jones Lang Lasalle Americas, Inc., 627 S.E.2d 382, 384 n.2 (Ga. Ct. App. 2006) (recognizing that a property manager who was responsible for "among other things, ensuring compliance with laws, ordinances, and regulations, and inspecting, maintaining, and repairing the premises," owed a duty under § 51-3-1); Ashley v. Balcor Prop. Mgmt., Inc., 423 S.E.2d 14, 15 (Ga. Ct. App. 1992) (finding a question of fact as to a management company and property manager's liability under § 51-3-1); Gregory v. Trupp, 319 S.E.2d 122, 123 (Ga. Ct. App. 1984) (holding that a question of fact existed as to whether a partner whose partnership owned an apartment complex exercised sufficient control over the premises to qualify as an owner or occupier); Coffer v.

8

Bradshaw, 167 S.E. 119, 122 (Ga. Ct. App. 1932) (holding that the owner or person in charge of the property owes a duty to invitees). These cases demonstrate that a manager may, "under certain circumstances and with sufficient supervisory authority," be held liable under § 51-3-1. Poll, 2007 WL 2460769, at *5.

Defendants, in their attempt to show that there is no possibility Mr. Wilke could be held liable under Georgia law, primarily rely on two cases: Matos v. Wal-Mart and Adams v. Sears Roebuck. In Matos, the defendants removed a premises liability action based on diversity of citizenship, claiming that the store manager was fraudulently joined to defeat diversity jurisdiction. Matos v. Wal-Mart Stores, Inc., No. 4:05-cv-213-WTM, Doc. 39 (S.D. Ga. May 9, 2006). In denying the motion to remand, the Court relied heavily on the Adams decision, in which the Georgia Court of Appeals held that a manager could not be held liable as an owner or occupier of a store. Id.; Adams v. Sears Roebuck & Co., 490 S.E.2d 150, 153 (Ga. Ct. App. 1997) ("Regardless of whether Sears might be liable in this case, because Washington was neither an 'owner nor occupier' of the Sears' store, he cannot be held liable under O.C.G.A. § 51-3-1, as a matter of law, and Adams has asserted no other basis for imposing personal liability upon him.").

9

Although the Court recognizes that the Adams decision supports the result in Matos, in the years since Matos was decided the weight of authority in federal courts of this state has shifted and now dictates a contrary result.[4] See Hambrick v. Wal-Mart Stores East, LP, No. 4:14-cv-66, 2014 WL 1921341, at *4 (M.D. Ga. May 14, 2014) (holding that the "uncertainties in Georgia law" regarding whether liability may be imposed on a manager must be resolved in the plaintiff's favor); Parker v. Goshen Realty Corp. et al., No. 5:11-cv-136, 2011 WL 3236095, at *3 (M.D. Ga. July 28, 2011) ("[T]he Court is unable to conclude that there is no possibility that the Plaintiff's complaint states a cause of action against" a store manager under § 51-3-1.); Stephens v. Wal-Mart Stores East, LP, No. 5:09-cv-325, 2010 WL 1487213, at *1 (M.D. Ga. Apr. 12, 2010) ("Georgia courts have not provided clear guidance, however, with regard to the potential liability of a store manager in a slip-and-fall case. Based on the existing case law, it is possible that [the defendant] could be held liable under Georgia law."); Ott, 2010 WL 582576, at *3 (finding that § 51-3-1 "provide[s a] plausible means of establishing [the manager's] duty to keep the premises

---

[4] An opinion from the Georgia Supreme Court following the Adams decision is instructive. There, the Court held that a director of security was neither an owner nor occupier of the premises at issue. Anderson v. Atlanta Comm. for Olympic Games, Inc., 537 S.E.2d 345, 350 (Ga. 2000). In so holding, the Court compared a security director's liability with that of a corporation or general manager, citing Bourn v. Herring for the proposition that a "corporation and general manager may be subject to liability as owners of property[.]" Id. (citing Bourn v. Herring, 166 S.E.2d 89, 92 (Ga. 1969)).

safe."); Poll, 2007 WL 2460769, at *6 (ordering remand and distinguishing Adams because (1) it was decided on a motion for summary judgment where more evidence was available, (2) the Adams court did not indicate an intent to "overrule or abandon its earlier line of cases," and (3) even if the manager was not an owner or occupier of land, he could still be liable under agency principles).

Indeed, the disparity between these various opinions makes clear that "some uncertainty exists as to whether a store manager . . . may be held liable as either an 'owner or occupier' under O.C.G.A. § 51-3-1, or as an agent of an 'owner or occupier' under traditional agency principles. That uncertainty is enough to require remand." See Poll, 2007 WL 2460769, at *7. That Mr. Wilke's liability might be contingent on the degree of control he exercised is not outcome determinative at this early stage in litigation because Plaintiff need "only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). Thus, the Court finds that Defendants have failed to carry their heavy burden of establishing fraudulent joinder as there is at least some possibility that Plaintiff states a cause of action against Mr. Wilke. For that reason, complete

diversity of citizenship is not present and the Court lacks jurisdiction over this matter.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion to Remand (Doc. 7) is hereby **GRANTED**. The Clerk is **DIRECTED** to **REMAND** this case to the Superior Court of Richmond County, Georgia. The Clerk is further directed to **TERMINATE** all motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of December, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA